**CHICAGO, R. I. & G. RY. CO. v. R. S. LE SAGE MOTOR CO. (No. 10543.)**

(Court of Civil Appeals of Texas. Fort Worth. March 22, 1924.)

1. **Evidence ⬅318(4)—Testimony as to delivery of goods to carrier based on written reports held inadmissible as hearsay.**

In action for alleged missing parts from shipment of automobile accessories alleged to have been delivered to defendant carrier by F. Company for plaintiff, testimony of F. Company's stock foreman as to such delivery *held* inadmissible as hearsay, where witness testified he had nothing to do with shipment personally and based his knowledge on written reports made.

2. **Evidence ⬅318(3)—Testimony of manager of transfer company as to delivery to defendant carrier held inadmissible as hearsay, because based on records not in evidence.**

In an action for alleged missing parts from shipment of automobile accessories, testimony of manager of transfer company as to delivery to defendant's receiving clerk *held* inadmissible as hearsay, where witness did not receive goods personally and his knowledge for most part at least was dependent upon records not appearing in evidence.

3. **Carriers ⬅94(3)—Evidence held not to show delivery to carrier of shipment consigned to plaintiff.**

In action for alleged missing parts in a box which was a part of shipment of auto accessories, where bill of lading issued pursuant to Vernon's Sayles' Ann. Civ. St. 1914 or Complete Tex. St. 1920, art. 715, did not correspond with list of missing parts as set forth in plaintiff's exhibit nor with list set forth in invoice, evidence *held* insufficient to show that box was delivered to defendant.

Appeal from Young County Court; W. H. Rieves, Judge.

Action by the R. S. Le Sage Motor Company against the Chicago, Rock Island & Gulf Railway Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded for new trial.

Lassiter & Harrison, of Fort Worth, and Johnson & Johnson, of Graham, for appellant.

Marshall & King, of Graham, for appellee.

CONNER, C. J. This suit was instituted by R. S. Le Sage, doing business at Graham, Young county, Tex., under the trade-name of Le Sage Motor Company, against the Chicago, Rock Island & Gulf Railway Company to recover the sum of $453.94, the alleged value of certain automobile parts as set forth in an exhibit to the plaintiff's petition. It was alleged in substance that said goods had been delivered to the defendant railway company at the city of Dallas for the purpose of having the same transported and delivered to plaintiff at Graham, Tex.; that the transportation charges had been duly paid, but the defendant had negligently and wrongfully failed to deliver the same as it had agreed to do, to the plaintiff's damage in the sum of $453.94.

The defendant pleaded a general denial and specially that it had never received for transportation the goods as alleged.

The case was submitted to a jury on a single issue, to wit:

"Did the defendant deliver to plaintiff or to plaintiff's agent at Graham, Tex., all the goods and wares that were delivered to the defendant at Dallas, Tex., for shipment to plaintiff at Graham, Tex.?"

To this issue the jury answered, "No," and judgment was accordingly entered in favor of the plaintiff for the sum of $453.94, and from this judgment defendant has prosecuted this appeal.

It will be noted that the court in the issue submitted to the jury assumes that the goods in question were in fact delivered to the defendant at Dallas for shipment to the plaintiff, but under the evidence this appears to have been a vital issue. The charge was not objected to, however, and no assignment of error complains of its form. We will not, therefore, point out its effect. The assignments of error are only to the sufficiency of the evidence to sustain the judgment and the rulings of the court in the introduction of testimony.

There was evidence tending to show that the specified auto parts had been ordered from the Ford Motor Company of Dallas by the plaintiff, and for the purpose of showing that the Ford Motor Company had delivered them to the defendant for transportation the plaintiff offered the testimony of W. B. Carey, who testified that he was the "service stock foreman" of the Ford Motor Company of Dallas, and was such on September 30, 1920, the date of the shipment in question; that his duties then were "supervising, ordering, receiving, handling, and shipping the service stock, also the investigating of claims of shortage of the same." He further testified that he was acquainted with the plaintiff Le Sage of Graham, and that the Ford Motor Company of Dallas received an order from the plaintiff for Ford parts "on or about September 25, 1920"; that he "did not fill the above-mentioned order; however, it was filled, checked, and packed by men under my supervision"; that "the following are packages, boxes, etc., so shipped under said order No. 495." The witness then set forth a list of the auto parts, in boxes, crates, etc., shipped under the number mentioned. The list specified 14 boxes, ranging in weight from 15 to 869 pounds; 6 crates, ranging in weight from 83 to 255 pounds; 11 bundles, ranging in weight from 20 to 150 pounds; 1 frame,

weighing 60 pounds; 2 bales of dash, weighing 75 pounds; 20 front springs, weighing 340 pounds. The witness stated that the original invoice of the goods had been mailed to the plaintiff at Graham. In answer to the question of whether "all the articles named" in the invoice were delivered in good order to the railway company for transportation to Graham, he answered:

"I do not know. We delivered them in good order to the Empire Transportation Company to be delivered to the Chicago, Rock Island & Gulf Railway Company, and they were consigned to the Le Sage Motor Company at Graham, Tex."

He further stated that he did not have the original bill of lading issued by the railway company, but had a copy thereof which was attached to his deposition and marked "Exhibit B." In answer to the question of whether all the items named in the bill of lading had been delivered to the railway company, the witness answered:

"We delivered all items listed on the bill of lading to the Empire Transfer Company, and they returned us a receipt for same from the railroad. I am furnishing to the notary the receipt so furnished by the railroad company, and it is marked 'Exhibit C' for identification and attached to my deposition."

[1] In answer to the inquiry of whether "all the packages or boxes listed in the waybill or bill of lading 'were' delivered to the railway company in good condition," the witness answered:

"We delivered the goods to the Empire Transfer Company in good order, and they in turn delivered them to the Chicago, Rock Island & Gulf Railway Company and received a receipted bill of lading to show they were in good order. The transfer company then delivered the copy of the bill of lading to us."

To the answer of the witness last given the appellant objected on the ground that the evidence of the witness as a whole showed that said answer was hearsay. We are of the opinion that the assignment of error complaining of the action of the court in admitting this testimony over appellant's objection must be sustained, for in answer to cross-interrogatories the witness testified:

"Personally, I had nothing to do with the shipment in question. I did not pack any of the boxes, but they were packed under my supervision. * * * The boxes were packed in the shipping room of the Ford Motor Company at Dallas. We delivered them to the Empire Transfer Company, and the Empire Transfer Company delivered them to the Chicago, Rock Island & Gulf Railway Company at their local freight office in Dallas. Their freight office is about a mile from the Ford Motor Company. They were carried from the Ford Motor Company to the freighthouse on a horse-drawn float. The float was driven by Odell Matilla. * * * I did not deliver any of these boxes to the railway company. It is a fact that I do not truck or carry shipments of goods and deliver them. It is a fact that I only know from reports that these boxes were delivered to the defendant. I have no additional information about this. I was not present at the freight depot when these boxes were delivered at the freight depot."

The driver, Odell Matilla, was not put upon the stand, and he, apparently at least, was the one witness who could have testified from personal knowledge that all of the boxes, crates, bundles, etc., that had been delivered to him for transportation to the depot had been in fact delivered to the railway company. Nor was the receiving clerk of the railway company placed upon the stand, by whom, apparently at least, it could have been shown the number of boxes, etc., that had been delivered by the transfer company.

Article 715, Complete Tex. St. 1920, requires carriers to issue bills of lading, and the objections above noted might have been obviated had the bill of lading presented in the statement of facts listed the articles specified in the list of missing auto parts for which the plaintiff sues as shown by the exhibit attached to the plaintiff's petition. But such is not the case. The bill of lading appearing in the statement of facts does not correspond with the list set forth in the exhibit, nor even with the list set forth in the invoice attached to the deposition of the witness Carey. On the contrary, the bill of lading designates the articles received by the railway company as:

"1 box gen. field coils, 180 lbs.
"1 box elect. appl., 44 lbs.
"2 box lamp lens doors, 56 lbs.
"1 box cord gaskets, 30 lbs.
"11 boxes auto parts, 2,177 lbs.
"5 crates of specified parts,
"8 bundles of specified parts."

But there was no single box of 840 or 860 pounds. So that, on the whole, it cannot be said from any other testimony than that objected to as hearsay that the specified articles of auto parts, for the value of which the plaintiff sued, was in fact delivered by the Ford Motor Company at Dallas to the defendant railway company for shipment.

[2] The plaintiff also offered the testimony of one I. F. Tobias, by deposition, who testified that he was the "manager of the Empire Transfer & Storage Company on November 30, 1920"; that his duties were to "manage"; that he received a shipment for plaintiff from the Ford Motor Company of Dallas about September 30th, and that "we delivered them to the Chicago, Rock Island & Gulf Railway Company"; and that "all of the goods as set out in the bill of lading were delivered to the receiving clerk." The witness further stated that the copy and original bill of lading had been sent to the Ford Motor Company at Dallas.

The testimony of the witness so given was

duly objected to on the ground, among others, that it was hearsay. The objection was overruled, and error has been duly assigned to the ruling.

We think the objection to this witness' testimony as above set forth is also well taken. From the testimony of the witness as a whole it is apparent that he did not receive the goods personally and that his knowledge for the most part at least was dependent upon records which do not appear in evidence. To illustrate, in answer to an interrogatory upon what he based his recollection, he answered:

"I base my recollection on records. The original which is the only one we had is now out of our files."

In answer to other questions he stated that he handled several shipments every day, but could not state, without referring to records, what other shipments he handled on the day the shipment in question was handled. The following interrogatory was propounded to this witness:

"If you have answered original interrogatory No. 6 to the effect that you delivered all the goods set out on the bill of lading, how do you know. that you delivered all of these goods? State fully as to this."

The witness answered:

"Because we received all of it at Ford Motor Company, according to actual count and check. The receiving clerk will not receipt a B/L without exception unless all of shipment is received by him, and the driver's report showed that all was delivered to the Chicago, Rock Island & Gulf Railway Company."

[3] The further objection that the judgment is not supported by the evidence we think is also well taken. From the testimony and briefs of counsel, we infer that the effort of plaintiff in the court below was to show that a certain box weighing 840 pounds was missing, and that such box included the missing auto parts specified in the exhibit of the plaintiff's petition. The witness Tobias was asked in one of the cross-interrogatories whether he "received and delivered as a part of the shipment," in question, "a certain box weighing 840 pounds," and, "if so, point out this box on the bill of lading," a copy of which purported to be attached to the interrogatory. The witness answered:

"I did not weigh this box, neither did I weigh any other boxes, of this shipment, but it was included in item No. 3 on the last sheet of the bill of lading in question listed as 11 boxes steel auto parts, weight 2,177 lbs."

The man or men who filled the plaintiff's order and packed them in the rooms of the Ford Motor Company at Dallas under the supervision of the stock foreman Carey did not testify, and no witness testified that the particular articles specified in the list for which the plaintiff sought to recover was packed in any particular box of any particular weight. Nor did the driver of the Empire Transfer Company or the receiving clerk of the railway company testify and identify a particular box of 840 pounds.

Burt Bray testified that he had lived in Young county all his life, and in October, 1920, was checking freight at Graham for the Rock Island Railway; that he remembered the shipment of the auto parts from the Ford Motor Company at Dallas, consigned to Le Sage Motor Company at Graham. He further said:

"I checked it out and delivered it to Mr. Cornish in person. * * * I checked those 11 boxes to Mr Cornish, and I see from the bill that I delivered those 11 boxes to Mr. Cornish. * * * Mr. Cornish got all the bales, bundles, boxes, and accessories called for, and they were all marked for the Le Sage Motor Company. Mr. Cornish did not make any complaint about any shortage at that time. but some few days later he did. He said that Mr. Le Sage checked that bill up and that there was some shortage. I told him all we had to go by was the freight bill."

Rex Cornish, a witness for plaintiff, testified that he had lived in Graham about 30 years, and that his business was that of drayman, and that he was in that business in October, 1920; that he remembered the shipment of auto parts consigned from Ford Motor Company at Dallas to the Le Sage Motor Company at Graham; that he hauled it from the depot to their place of business; that one item called for 11 boxes of steel auto parts and a number of other miscellaneous items. He further testified.

"There was no box in that shipment that weighed 850 pounds, for I loaded it all on the wagon myself without any assistance. * * * I think Mr. Bray checked the freight to me, and I signed a receipt for the freight. We got the number of boxes and crates called for at the time to the best we could tell. We had trouble comparing the bill against the packages, but to the best we could make it, it checked. * * * The boxes did not show what they contained, and we had to guess just what the boxes did contain. * * * I loaded them on the wagon myself, and I am positive that none weighed 850 pounds, for I could not have lifted it. After that I saw Mr Le Sage. He had checked up this shipment and said there was a shortage. I called his attention to the fact that we had had trouble checking it up."

The plaintiff R. S. Le Sage testified that the shipment was billed from the Ford Motor Company at Dallas to him at Graham, and that he paid the draft at the bank and got the bill of lading and took it down to the depot and paid the amount of freight and got the freight bill, which was surrendered at the time he got the shipment; that he did not see the shipment after it arrived until it got down to his place, and "then my brother

checked it over." On cross-examination he testified:

"I do not know what was in each box only by the invoice. * * * I helped check over this shipment, but did not do very much of it. I do not know whether the box weighed 840 pounds or not, nor do I know what was in the box."

Mr. J. H. Le Sage testified that he was the brother of R. S. Le Sage and worked for the Le Sage Motor Company; that he remembered getting the shipment of auto parts from the Ford Motor Company at Dallas, consigned to Le Sage Motor Company; and that—

"I checked the shipment when it arrived at the garage. Cornish and Bates brought the shipment up from the depot. I do not think the contents or bundles were intact when they arrived. I did personally make a list of the parts that were short, the ones that did not check up on the invoice. * * * According to the way we checked it, this list is correct, and to my knowledge these parts were never delivered."

On cross-examination he testified:

"I could not tell without looking at the invoice and checking how many radiators were in that crate. Neither do I know how many parts were in that box. The invoice that I received and the boxes did not specify the parts in each box; it just enumerated the parts in the whole shipment. I got this list (evidently referring to the list attached to the plaintiff's petition) by checking from the invoice when the articles did not show up. * * * I could not say whether the 11 boxes of steel auto parts were all received or not. I do not know whether or not the Ford Motor Company actually shipped those articles that were short from the boxes. There was not a box that weighed 850 pounds in that shipment, and I do not know whether an 850-pound box left the Ford Motor Company consigned to the Le Sage Motor Company."

We conclude that, for the errors indicated, the judgment below should be reversed, and the cause remanded for another trial.